UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CAROL PECK,
        Plaintiff,

v.                                             Case No. 14-CV-1244

KELLY SERVICES INC,
        Defendant.

## DECISION AND ORDER

Plaintiff, Carol Peck, alleges that her employer, Kelly Services Inc., violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA) by intentionally discriminating against her because of her sex and age and retaliating against her for opposing such discrimination. Before me now are defendant's motion for summary judgment and motions from each party to seal certain supporting documents.

## I. BACKGROUND

Defendant provides staffing services to other companies, such as assisting them in recruiting and retaining employees. Defendant is organized into several departments, known within the company as "verticals," that provide differing services to clients. Plaintiff started working at defendant as a temporary employee in the Recruitment Process Outsourcing department (the "RPO vertical") in 2002 before becoming a full-time employee there. The RPO vertical recruits employees for other companies. Plaintiff worked for defendant from 2002 to 2011. She is female and was over 40 years old at all relevant times.

1

In July 2008, as part of a reduction in force within the RPO vertical, plaintiff was transferred to defendant's Global Practice Office (GPO), which merged into defendant's Global Implementation Services department (GIS) in 2009. GIS internally supports defendant's verticals, which in turn provide services to outside companies. Defendant's verticals are essentially GIS's clients.

Plaintiff worked as an implementation manager in GIS supporting the RPO vertical, in which she had previously worked. Her supervisor was Paul Rubel, Rubel's supervisor was Bob Roushey, and Roushey's supervisor was Kent Schomer. Plaintiff generally received positive feedback from fellow employees, clients, and her supervisors.

In September 2009, Stacey Forbes, regional practice lead for the RPO vertical, contacted Roushey about plaintiff. Forbes complained about plaintiff's work and conduct and said that she no longer wanted plaintiff supporting the RPO vertical. In January 2010, Roushey told plaintiff that she would no longer be servicing the RPO vertical because of structural changes in the RPO vertical and personality issues. In May 2010, Roushey told plaintiff about Forbes's complaints. Defendant promoted a male GIS employee to service the RPO vertical.

In May 2010, defendant promoted Wendy Berg to the position of senior implementation manager in GIS. Berg is about 14 years younger than plaintiff.

In July 2010, plaintiff's lawyer sent a letter to defendant complaining about age and sex discrimination in the workplace.

In September 2010, Rubel assigned Melvin Johnson and Michael Connolly to lead a project for Johnson & Johnson in Puerto Rico supporting defendant's Business

2

Process Outsourcing (BPO) vertical. Both are male, and Johnson is about 12 years younger than plaintiff. Plaintiff claims that she was assigned a purely administrative role on the project, but defendant disputes this.

On October 10, 2010, plaintiff emailed Schomer telling him that she planned to submit complaints to the Equal Rights Division of the Wisconsin Department of Workforce Development (ERD) and the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of sex and age. She filed those complaints on October 27, 2010.

After filing her complaints, plaintiff claims that her superiors limited one-on-one communications with her by cancelling meetings, converting one-on-one meetings into group meetings, or ceasing direct communication entirely. Defendant disputes this. Plaintiff also claims that Rubel said that he would not talk to her about promotional opportunities or career advancement while her legal claims were pending. Finally, plaintiff says that she was assigned to only administrative work after she filed her complaints. Defendant disputes this, too.

Plaintiff resigned in January 2011 in an email to Rubel, Roushey, and Schomer indicating that she was doing so because of a pattern of discriminatory and retaliatory conduct that stalled her career and affected her emotional health and well-being. She started work at another staffing company the next week.

In October 2011, plaintiff filed additional complaints with ERD and EEOC alleging further discrimination because of her age and sex and retaliation because she opposed such discrimination.

3

## II. DISCUSSION

Plaintiff alleges several violations of Title VII and the ADEA. First, plaintiff alleges defendant discriminated against her because of her sex in violation of Title VII when it (1) removed her from servicing its RPO vertical in January 2010 and replaced her with a male employee and (2) assigned two male employees to lead the Johnson & Johnson project in September 2010. Next, plaintiff alleges that defendant discriminated against her because of her age in violation of the ADEA when it (1) assigned Melvin Johnson to co-lead the Johnson & Johnson project and (2) promoted Wendy Berg to the position of senior implementation manager in May 2010. Finally, plaintiff alleges that defendant retaliated against her for complaining about this sex and age discrimination and for filing complaints with the EEOC and ERD.

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding this motion, I construe all facts and make all reasonable inferences in the light most favorable to the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483–84 (7th Cir. 2008).

### A. Discrimination Claims

Title VII prohibits an employer from making sex a "motivating factor" in an employment decision. 42 U.S.C. § 2000e-2(m). The ADEA prohibits an employer from

4

discriminating against an employee "because of such individual's age" if the employee is at least 40 years old. 29 U.S.C. §§ 623(a)(1)-(2), 631(a).

The Seventh Circuit recently clarified the legal standard to be applied when considering a summary judgment motion on a claim of intentional discrimination:

> That legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."

*Ortiz v. Werner Enterprises, Inc.*, No. 15-2574, 2016 WL 4411434, at *4 (7th Cir. Aug. 19, 2016). Plaintiffs may put forth direct or circumstantial (*i.e.*, indirect) evidence of intentional discrimination or proceed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its successor cases. Although the Seventh Circuit said that its recent decision in *Ortiz* "does not concern *McDonnell Douglas* or any other burden-shifting framework," it reiterated that "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz*, 2016 WL 4411434, at *5.

Plaintiff employs the burden-shifting framework, under which she must first establish a prima facie case of discrimination, the specific elements of which differ depending on the nature of the claim. *See, e.g.*, *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). Next, the defendant must provide a legitimate, nondiscriminatory reason for its action. *Id.* at 982. Finally, the plaintiff must show that the defendant's stated reason was a pretext for discrimination.

5

**1. Removal from RPO vertical**

Plaintiff claims that defendant discriminated against her because of her sex when it removed her from servicing its RPO vertical and replaced her with a male employee. Plaintiff's claim fails because, even if she can establish a prima facie case, she fails to provide sufficient evidence to allow a reasonable jury to conclude that defendant's stated reason for its action was pretextual.

Defendant states that it acted as it did because Forbes, regional practice lead for the RPO vertical, complained about plaintiff's work and conduct and asked that she no longer be assigned to RPO projects. Defendant presents an affidavit from Roushey about the matter and a contemporaneous entry that he made in his calendar noting Forbes's criticisms of plaintiff. For GIS, a department that services defendant's verticals, Forbes's request was similar to a client request that a specific employee no longer be assigned to work with it. Forbes's request was a legitimate, nondiscriminatory reason for Roushey's action.

Plaintiff's arguments are insufficient to raise a genuine issue of pretext. Plaintiff contends that Forbes's complaints were not true because she generally received positive feedback for her RPO work. This is irrelevant. The issue is not whether Forbes's criticisms of plaintiff were accurate but whether Roushey acted as he did because of what Forbes said to him rather than for a discriminatory reason. Plaintiff also argues that Roushey would not have done what he did on so little information. But, again, in the face of Forbes's request, this argument is insufficient to raise a question about Roushey's motivation. Plaintiff also points to the lapse of a few months between Forbes's request and Roushey's action and to Roushey's initial failure to mention

6

Forbes's request to plaintiff. In these respects, Roushey's handling of the matter may not have been exemplary, but it does not create a basis for inferring discriminatory intent. Finally, plaintiff notes that Rubel didn't mention Forbes's request in her 2009 year-end performance review in March 2010. However, it is unclear that Rubel was aware of what Forbes had said to Roushey and, even if he was, his not mentioning it to plaintiff would not justify an inference of discrimination.

It is also worth noting that, during 2010, more than 70% of the employees in the GIS department were female and more than 60% were 40 years old or older. *See* ECF No. 37-9, at 15. Also, of the five employees who were promoted while plaintiff worked in that department, four were female, and two were older than plaintiff. This evidence does not preclude a finding of discrimination, but it cuts against an inference of same.

**2. Wendy Berg promotion**

Next, plaintiff claims that defendant discriminated against her because of her age when it promoted Wendy Berg instead of her. In order to succeed on a failure-to-promote claim, plaintiff must demonstrate that she was qualified for the position sought. *Riley v. Elkhart Cmty. Sch.*, No. 15-3166, 2016 WL 3947810, at *3 (7th Cir. July 22, 2016) (citing *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016)). Based on the evidence presented, plaintiff fails to meet this requirement.

The job description for the position to which Berg was promoted, as of May 2010, required that candidates be "PMP Certified." ECF No. 30-5, at 4. Neither party ever explains what this means, but they agree that it is a relevant qualification for the position and that plaintiff was not PMP certified. Plaintiff contends that such certification was not a genuine requirement for the position, but the only employee she points to who was

7

promoted without such certification was promoted years earlier and it is unclear whether such certification was then required. Plaintiff also offers the opinion of a former employee, but he appears to lack personal knowledge of the requirements for the position at issue because he was not working for defendant in 2010 and, even when he was, he did not work in the GIS department. Finally, plaintiff points out that some employees who were promoted did not list PMP certification on their LinkedIn profiles, but this establishes little, if anything.

**3. Johnson & Johnson project**

Finally, plaintiff claims that defendant discriminated against her because of her age and sex when it assigned Johnson and Connolly to lead the Johnson & Johnson project in September 2010. Defendant responds that Johnson and Connolly were chosen because they were more qualified to lead this project. Plaintiff's claim fails because she cannot establish that defendant's stated reason for its decision, that Johnson and Connolly had superior qualifications, was pretextual. The project in question supported the Business Process Outsourcing (BPO) vertical, in which Johnson and Connolly both had substantially more experience than plaintiff. *Compare* Johnson Training Matrix & Connolly Training Matrix, ECF No. 41, at 2–4, *with* Peck Training Matrix, ECF No. 30-6, at 4. Plaintiff argues that she worked in the GIS department longer than Johnson and Connolly. But, the evidence indicates that Johnson and Connolly had far more relevant experience than plaintiff. Prior to the Johnson & Johnson project, Connolly and Johnson had each led several large BPO projects, while plaintiff had led only a single small one.

8

## B. Retaliation Claims

Plaintiff also claims that defendant retaliated against her in violation of Title VII and the ADEA for opposing discrimination because of her sex and age. Both statutes prohibit an employer from retaliating against an employee for opposing discrimination. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). The method of proof by which plaintiff proceeds requires her to show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse action, and (3) there is a causal connection between her statutorily protected activity and the adverse action. *Metzger v. Ill. St. Police*, 519 F.3d 677, 681 (7th Cir. 2008).

The parties agree that plaintiff engaged in statutorily protected activity. An employee engages in protected activity when she files a complaint with her employer indicating discrimination because of a protected category and when she files charges with the EEOC or an equivalent state or local agency. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Plaintiff did both.

Plaintiff argues that defendant committed adverse actions in that it (1) progressively diminished her responsibilities until she was performing only administrative work, (2) limited or eliminated one-on-one communications with her, (3) acted with indifference toward her promotional opportunities and career advancement and, through Rubel, said that it would not talk to her about career advancement while her case was pending, and (4) constructively discharged her.

Some of these actions were arguably adverse. Employment actions that are likely to cause an employee's skills to atrophy and stunt her career are adverse. *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). Plaintiff presents

9

evidence that after she complained about discrimination defendant reduced her duties by assigning her to purely administrative duties on the Johnson & Johnson project and after she filed her EEOC and ERD complaints defendant reduced her duties even further. A reasonable jury could find that such a reduction in plaintiff's duties was likely to cause her skills to atrophy and stunt her career.

It is also arguable whether defendant constructively discharged plaintiff, and discharge is an adverse action. A constructive discharge occurs when an employer makes "working conditions so miserable that it drives [an employee] to quit." *Hunt v. City of Markham*, 219 F.3d 649, 655 (7th Cir. 2000). When a discharge is the end result of an ongoing pattern of retaliation, courts must view the discharge in light of that ongoing pattern. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829 (7th Cir. 2014). Plaintiff presents enough evidence to enable a reasonable jury to conclude that defendant engaged in an ongoing pattern of retaliation that worsened with each attempt she made for redress, that her responsibilities were diminished with each complaint she made until she felt that she had no future with the company. A jury could find that a reasonable employee would be driven to quit under those conditions.

The other actions that plaintiff cites were not adverse because they did not result in any injury. *See Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) ("Federal law protects an employee only from retaliation that produces an injury . . . ."). These include the elimination of one-on-one contact, the cancellation of meetings, and the lack of communication with her by Roushey and Rubel.

Some of these actions, however, while not adverse, arguably constitute evidence of a causal connection between her statutorily protected activity and the adverse actions

10

she did suffer. An example is Rubel's statement that he would not talk to plaintiff about promotional opportunities or career advancement while her case was pending. This statement would support an inference that plaintiff's supervisors reduced her duties until they drove her out of her job because she complained about discrimination. The temporal relationship between the protected activity and defendant's adverse actions also supports plaintiff's claims. Plaintiff provides evidence that defendant reduced her duties after she complained about discrimination in July 2010 and further reduced her duties after she filed her EEOC and ERD complaints. Thus, a reasonable jury could find a causal connection between protected activity and defendant's adverse actions.

### III. MOTIONS TO SEAL

Both parties move to seal supporting documents submitted to the court with their filings on defendant's motion for summary judgment. Per General L. R. 79(d)(3), consistent with this court's protective order in this case (ECF No. 18), "[a]ny motion to seal must be supported by sufficient facts demonstrating good cause for withholding the document or material from the public record." Neither party has provided any factual basis for sealing their supporting documents. The parties shall provide good cause for sealing their respective documents within ten (10) days or I will deny parties' motions and order these documents unsealed.

### IV. CONCLUSION

**IT IS ORDERED** that defendant's motion for summary judgment (ECF No. 29) is **GRANTED** as to plaintiff's intentional discrimination claims and **DENIED** as to her retaliation claims.

11

Case 2:14-cv-01244-LA   Filed 09/02/16   Page 11 of 12   Document 42

**IT IS FURTHER ORDERED** that within ten (10) days the parties must provide the court with a justification for granting their motions to seal (ECF Nos. 36, 40).

Dated at Milwaukee, Wisconsin, this 2nd day of September, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge